FILED
MAY 2 9 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL SANTOS,

Plaintiff,

v.

HARVER COMPANY, CASCADE ACOUSTICS, WESTERN PARTITIONS, INC., and INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, LOCAL #110,

Defendants.

CV. 08-1206-AC

FINDINGS AND RECOMMENDATION

---

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

In this action, plaintiff Rachel Santos ("Santos") is suing her former employers, Harver Company ("Harver"), Cascade Acoustics ("Cascade"), and Western Partitions ("Western"), as well as her former union, the International Union of Painters and Allied Trades, Local #10 ("Painters' Union")(collectively "Defendants"), asserting claims for sex discrimination, sexual harassment,

workers' compensation discrimination, opposition to unlawful employment practices, intentional interference with economic relations, and aiding and abetting discrimination and retaliation. Santos filed her complaint in the Circuit Court of the State of Oregon for the County of Multnomah on August 19, 2008. Defendants removed the action to this court asserting that resolution of the state law claims requires the interpretation of a collective bargaining agreement resulting in federal question jurisdiction under § 301 of the Labor Management Relations Act (28 U.S.C. §185, *et seq.*)("LMRA").

Presently before the court is Santos's motion to remand the action to state court. For the reasons discussed below, Santos's motion should be granted and this action remanded. Santos's request for attorney fees incurred to effect remand should be denied.

*Background*[1]

Harver hired Santos as a utility driver on October 31, 2006. Santos alleges that her male co-workers subjected her to rude and lewd sexual comments and that one male employee complained about riding as a passenger with Santos, stating that he did not trust women drivers and making offensive comments about womens'[2] intelligence and abilities. From April 24, 2007, to August 29, 2007, Harver dispatched Santos to various job sites as a drywall finisher apprentice. While on the job sites, the sexually offensive comments continued. Additionally, male co-workers refused to allow Santos to perform taping and drywall functions, relegated her to clean-up work, and unjustly criticized her performance. Santos also alleges that her male co-workers forced her "to work by

[1]The factual summary is taken from the allegations of Santos's complaint filed in state court on August 19, 2008, and removed to this court on October 15, 2008.

[2]Santos does not specifically allege that she is a woman. However, it is evident from the allegations in the complaint that she is a woman.

herself under unsafe working conditions and contrary to the terms of the union contract." (Compl. ¶ 12(n).)

On July 18, 2007, Santos suffered an on-the-job injury to her right foot and was off work for three weeks. She applied for, and was awarded, workers' compensation benefits. During her medical leave, a Harver representative contacted Santos and complained about the amount of time Santos was taking off work. Upon her return, Santos's co-workers again limited her to cleaning up after them and ridiculed her because she was not allowed to perform drywall finishing work.

Harver terminated Santos on August 29, 2007, indicating that she was being laid off for lack of work. Harver then allegedly replaced Santos with a male drywall finisher.

Cascade hired Santos on January 17, 2008. Santos alleges that her Cascade co-workers subjected her to "rude and offensive sexually harassing statements about her marital status"[3] and "offensive and unwelcome touching of a sexual nature," all in violation of Cascade's written harassment and equal opportunity policies. (Compl. ¶¶ 21-23.) Cascade laid Santos off on February 22, 2008. Santos then alleges that:

> Pursuant to the contract Defendant Cascade had with Defendant [Painters' Union], Defendant Cascade was obligated to put plaintiff back to work before hiring another worker who had been out of work less time. Defendant Cascade refused to return her to work and filled the position with a male drywall finisher who was out of work for a lesser amount of time.

(Compl. ¶ 24.)

Western hired Santos as an apprentice taper on March 10, 2008. Shortly thereafter, Santos injured her elbow, wrist and back when she slipped on drywall mud left on the floor by her supervisor. Santos immediately reported the injury to her superiors. Western's safety coordinator

[3]Santos does not allege what her marital status was.

visited the job site, obtained information for a report, and took pictures. The coordinator then instructed Santos to return to work. Santos worked for an hour in excruciating pain before she was relieved from duty. She then waited another three hours before Western provided transportation to an urgent care facility. When Santos returned to work, she was limited to light duty with additional medical restrictions. Western assigned Santos job duties that exceeded her restrictions, and Santos suffered extreme pain when performing those duties. Western terminated Santos on May 8, 2008.

During the major portion of Santos's employment history set forth above, she was a member of the Painters' Union. The Painters' Union accepted Santos into its apprenticeship program ("Apprentice Program") on April 30, 2007. Santos alleges that the Painters' Union then discriminated against her based on her sex in a number of particulars. First, the Painters' Union refused to give Santos credit for her previous experience while her male counterparts were granted up to 70 per cent of total program hours for their previous experience, resulting in a significant pay disparity. Second, the Painters' Union refused to give Santos credit for work performed on written assignments while giving male apprentices credit for the same work. Third, the Painters' Union assigned Santos the duty of making coffee, sweeping, and mopping while the males were taught to work with tools. Santos alleges that her instructors refused to train her on the tools of the trade, stating that "I have never had a woman run these tools and I am not about to start now," and that they insinuated that Santos would never complete the Apprentice Program. (Compl. at ¶ 4.) Finally, the Painters' Union refused to take action when Santos made complaints about the sexual harassment and discrimination she was experiencing on job sites and thereafter attempted to terminate her from the Apprentice Program based on false and misleading accusations. Santos alleges that she was forced to quit her apprenticeship and union membership when the Painters' Union refused to train

her or put her back to work because she was a woman.

Santos filed a motion to remand this action to state court on November 14, 2008, arguing that not every dispute concerning employment between parties to a collective bargaining agreement is preempted by the LMRA. In her motion, Santos referred to an amended complaint which she intended to file that would eliminate all references to a collective bargaining agreement. On November 25, 2008, Santos filed her amended complaint upon order of the court and without any opposition from Defendants. The amended complaint does not contain the reference to the contract Cascade had with the Painters' Union found in paragraph 24 of the original complaint but does retain the reference to the union contract found in paragraph 12(n) of the original complaint.

*Legal Standard*

28 U.S.C. § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.*

Only cases that would have had original jurisdiction in a federal district court may be removed from state court. 28 U.S.C. § 1441(a)(2007). "Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). There is no diversity jurisdiction in this matter. Thus, the court must determine whether there is federal question jurisdiction over the parties' dispute and, more precisely, whether the LMRA confers that

jurisdiction.

Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2007). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, federal courts have recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983). "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.* at 13.

It is clear that the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow*, 478 U.S. at 808. Federal question jurisdiction exists only if the federal question appears on the face of plaintiff's complaint; if not, original jurisdiction is lacking, even if the defense is based on federal law. *Id.*

*Discussion*

Defendants assert that the resolution of Santos's claims against both Cascade and the Painters Union require construction of the Oregon State and Southwest Washington Master Area Agreement for the Drywall Finishing Industry for the period of July 1, 2005, through June 30, 2008 (the "Labor Contract"). Accordingly, Defendants argue that Santos's complaint is completely preempted by the LMRA and that federal jurisdiction exists. In the alternative, Defendants argue that Santos alleges

a claim for breach of the federal-law duty of fair representation against the Painters' Union and that the Apprentice Program is an employee benefit plan under the federal Employee Retirement Income Security Act (29 U.S.C. §§ 1001 *et seq*. (2007))("ERISA"), both of which create federal jurisdiction and defeat Santos's motion to remand. Finally, Santos seeks reimbursement of her attorney fees incurred as a result of the removal of this action to federal court.

A. LMRA

The Supremacy Clause of Article VI of the United States Constitution gives Congress the authority to preempt state law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985). In the absence of an express statement by Congress, state law is nonetheless preempted where: (1) Congress intends that federal law occupy a given field; or (2) state law actually conflicts with federal law, such that compliance with both state and federal law is impossible, or state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01 (1989)(citations omitted).

Section 301(a) of the LMRA, found at 29 U.S.C. § 185(a)(2007) provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Under § 301(a), federal courts have jurisdiction over controversies involving collective bargaining agreements and are authorized "'to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)(quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).

Section 301 preempts state law contract actions that attempt to enforce a collective-

bargaining agreement. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)(action filed in state court to enforce a no-strike clause in a collective bargaining agreement preempted by § 301). This preemption principle also extends beyond state law contract actions to any state-law claim that is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp.*, 471 U.S. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim . . . or dismissed as preempted by federal labor-contract law." *Id.* at 220. Thus, the preemptive effect of § 301 cannot be avoided by artfully pleading contract claims as tort claims. "The key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987)(citing *Allis-Chalmers*, 471 U.S. at 211).

However, preemption is not a foregone conclusion every time a collective bargaining agreement might be relevant. The Supreme Court has held that despite the broad preemptive effect of § 301, states retain the authority to confer nonnegotiable rights on individual employees that are independent of rights under a collective bargaining agreement and that actions to enforce these rights are not preempted. *Allis-Chalmers*, 471 U.S. at 212. Accordingly, state-law claims based solely on nonnegotiable rights that are independent of a collective bargaining agreement, such as the right to the prompt payment of wages upon severance, are not preempted by § 301. *Livadas v. Bradshaw*, 512 U.S. 107, 123-23 (1994). Similarly, when the collective bargaining agreement is only tangentially related to the state-law action or where the court's examination of the collective bargaining agreement is limited to a determination of whether a conflict exists, preemption is not

appropriate. *Loewen Group Intern., Inc. v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir. 1995).

In *Miller v. AT&T Network Sys.*, 850 F.2d 543, 547 (9th Cir. 1988), the Ninth Circuit acknowledged that despite the requirement that federal law govern the enforcement of collective bargaining agreements, the states still retained the right to establish rules governing the employer/employee relationship and that state laws that alter the substance of what private parties may agree to in a labor contract are not preempted by § 301. The court then developed a test to determine whether a state-law claim is preempted in situations where a collective bargaining agreement contains rights similar to those created by state law.

> In deciding whether a state law is preempted under section 301, therefore, a court must consider: (1) whether the [collective bargaining agreement] contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the [collective bargaining agreement], and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

*Id.* at 548.

1. Cascade

Santos alleges that Cascade discriminated against her when it allowed her co-employees to make rude and sexually harassing statements regarding Santos's marital status and to touch Santos in a sexual nature. Santos also alleges that Cascade discriminated against her based on her sex by rehiring a male drywall finisher while refusing to rehire her. Based on these allegations, Santos asserts claims against Cascade for sexual discrimination and harassment, workers' compensation discrimination, and opposition to unlawful employment practices, all under Chapter 659 of the Oregon Revised Statutes.

Under Oregon law, an employer has engaged in an unlawful employment practice if it discriminates against any individual based upon that individual's race, religion, color, sex, national origin, marital status or age. OR. REV. STAT. 659A.030(1)(2007). Similarly, an employer may not discriminate against an employee because the employee applied for workers' compensation benefits. OR. REV. STAT. 659A.040(2007). Oregon courts have consistently held that case law developed by the federal courts in the interpretation of Title VII can be used to interpret Chapter 659[4] of the Oregon Revised Statutes because the statutory schemes are similar and Chapter 659 is patterned after Title VII. *Vaughn v. Pac. Nw Bell Tel. Co.*, 289 Or. 73, 86 (1980); *Mains v. II Morrow, Inc.*, 128 Or. App. 625, 634 (1994); *Winnett v. City of Portland*, 118 Or. App. 437, 442 (1993).

A *prima facie* claim for discrimination based on sex comprises four factors. These factors are: (1) membership in a protected class; (2) application and qualification for the job or satisfactory performance of the job; (3) an employment decision, such as demotion, termination, or failure to hire made despite the satisfactory performance or qualifications; and (4) replacement in the position by an individual of comparable qualification who is not a member of the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To state a claim for sexual harassment under a hostile environment theory, a plaintiff must allege that: "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, (3) the conduct was sufficiently severe or pervasive [so as] to alter the conditions of . . . employment and create an abusive working environment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citations omitted). To present a *prima facie* case for retaliation under Chapter 659A, Santos must show that: (1) she

---

[4]The relevant provisions of Chapter 659 of the Oregon Revised Statutes were renumbered as Chapter 659A in 2001.

engaged in a protected activity; (2) defendants subjected her to an adverse employment action; and (3) the adverse employment action was a result of plaintiff's engagement in the protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Cascade fails to reference any portion of the Labor Contract that supports or creates a claim for discrimination or retaliation based on sex or the use of the workers' compensation system. Even if the Labor Contract does address an employee's claim for discriminatory or retaliatory treatment, none of the prima facie elements for Santos's claims against Cascade implicate unique rights granted to Santos under the Labor Contract. The elements merely raise factual issues relating to Santos's protected status, qualifications, and conduct, and the actions and motivation of Cascade and its employees. Purely factual questions such as those pertaining to the conduct of an employee and the conduct or motivation of an employer, do not sufficiently implicate the terms of a collective bargaining agreement to justify preemption. In these cases, the state-law claims do not require construction of the collective bargaining agreement and the claim is independent of such agreement. *Lingle*, 486 U.S. at 407.

A number of courts have reached the same conclusion and determined that the state-law discrimination claims before them were not inextricably intertwined with collective bargaining agreements and, therefore, were not preempted by federal law. *See, e.g., Lingle*, 486 U.S. 399 (tort claim of retaliatory discharge for filing workers' compensation claim recognized by Illinois courts was independent of a collective bargaining agreement in the sense that the resolution of the state-law claim did not require construction of the collective bargaining agreement and was not preempted by § 301); *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002)(reasonable accommodation and retaliation claims under Washington law not preempted under the LMRA); *Jimeno v. Mobil Oil*

*Corp.*, 66 F.3d 1514, 1523-28 (9th Cir. 1995)(handicapped discrimination claim not preempted because resolution of the claim required a "purely factual inquiry," therefore, interpretation of the collective bargaining agreement was not required to evaluate the plaintiff's *prima facie* case); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993)(national origin discrimination claim not preempted because rights conferred by the California Employment Act are "'defined and enforced under state law without reference to the terms of *any* collective bargaining agreement' . . [a]ctions asserting those rights are thus independent of collective-bargaining agreements.")(quoting *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989))(emphasis in *Ramirez*); *Jackson v. S. California Gas Co.*, 881 F.2d 638, 646 (9th Cir. 1989)(claims of race discrimination under California statute not preempted by § 301). Some of these courts have even held that the rights granted by the Oregon legislature to employees to be free from discrimination by their employers found in Chapter 659 of the Oregon Revised Statutes are nonnegotiable and independent of rights granted under collective bargaining agreements and, as such, are not preempted by § 301. See *Miller*, 850 F.2d at 550 ("Because Oregon's handicap discrimination statute imposes a mandatory and independent duty on employers that does not require interpretation of the terms of a [collective bargaining agreement], section 301 does not preempt claims brought under this statute."); *Shuler v. Distribution Trucking Co.*, CV No. 96-1189-MA, Opinion at 2 (D. Or. Nov. 18, 1996)("It is well-settled that statutory discrimination claims are not subject to LMRA preemption.")(citing *Lingle*, 486 U.S. at 412, *Ramirez*, 998 F.2d at 748); Vaughan, 289 Or. at 82-3 (Oregon statutes that protect employees receiving workers' compensation benefits from retaliatory discrimination by employers apply whether or not the employee is subject to a collective bargaining agreement and are not preempted by federal law.)

Cascade argues that Santos's specific reference to a contract between the Painters Union and Cascade in paragraph 24 of her complaint[5] requires the court to interpret the terms of the Labor Contract to resolve Santos's discrimination claims. In paragraph 24, Santos alleges that after she was laid off, Cascade refused to return her to work and rehired a male drywall finisher instead. She also alleges that this conduct was contrary to Cascade's obligation to return Santos to work before hiring other workers who were out of work for less time.[6]

The mere fact that Santos allegedly references the Labor Contract[7] does not necessarily mean that the Labor Contract is relevant or essential to Santos's claims. *Allis-Chalmers*, 471 U.S. at 211 ("[N]ot every dispute concerning employment or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by §301 or other provisions of federal law.") Only state-law claims that require the resolution of questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement are preempted by § 301. Santos's allegation that she was replaced with a male worker supports the

---

[5]Santos eliminates the reference to the Labor Contract in her amended complaint. However, the court must determine whether it had jurisdiction over the action at the time it was removed. Accordingly, the allegations in the amended complaint, which was filed after the action was removed, are not relevant. *Sparta Surgical Corp. v. Nat'l. Ass'n. of Sec. Dealers*, 159 F.3d 1209, 1213 (9th Cir. 1998)(jurisdiction is "analyzed at the time of removal without reference to subsequent amendments").

[6]Santos specifically references the Labor Contract in her allegations against Harver asserting that she was forced to work by herself under unsafe working conditions in violation of the union contract. Harver has not argued that this reference to the Labor Contract results in preemption.

[7]Santos argues that the reference to the contract between the Painters' Union and Cascade relates to the Apprentice Program, not the Labor Contract. Because the court finds that Santos's claims against Cascade are not inextricably intertwined with the Labor Contract and are, therefore, not preempted, the court need not address the issue of which agreement Santos was referring to in her complaint or if the Apprentice Program also qualifies as a collective bargaining agreement under the LMRA.

fourth element of a sex discrimination claim – replacement by an individual of comparable qualification who is not a member of the protected class – without reference to the Labor Contract. That Santos could also state a claim for violation of the recall provisions of the Labor Contract does not turn Santos's state-law discrimination claims into a claim for breach of the Labor Contract. The courts have regularly held that while a plaintiff may have a valid cause of action under both state law and the collective bargaining agreement, the plaintiff is the master of her complaint and may elect which action she wishes to pursue. *Caterpillar*, 482 U.S. at 392 (1987)("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.")

Even if Cascade relies on the recall provisions of the Labor Contract in its defense to establish that it had a legitimate, nondiscriminatory reason for hiring a male drywall finisher rather than Santos, Santos's claims are not preempted by § 301. Neither party has indicated that the recall provisions are in dispute or that interpretation of these provisions is required. A state-law cause of action is not preempted in situations where the meaning of terms in the collective bargaining agreement is not at issue. *Livadas*, 512 U.S. at 124 (the fact that a collective bargaining agreement will be considered in resolving state-law claim does not result in preemption of that claim).

Santos's complaint alleges purely state-law claims for sex discrimination, sexual harassment, and retaliation, both for seeking workers' compensation benefits and for complaining about sexual discrimination/harassment. None of these claims implicate the Labor Contract or require interpretation of the Labor Contract. The answer to the first question under the *Miller* test is "no". Therefore, Santos's claims against Cascade are not preempted by § 301 of the LMRA.

2. Painters' Union

Santos alleges that the Painters' Union discriminated against her by refusing to give her credit

for previous experience or written assignments while granting her male counterparts credit for the same, resulting in a significant pay discrepancy between Santos and her male counterparts. She alleges that her instructors made sexually disparaging comments to her, assigned her menial tasks, such as making coffee, cleaning, and mopping, and refused to train her, all because she is a woman. Additionally, the Painters' Union allegedly did not respond to Santos's complaints about sexual harassment and discrimination on the job site and constructively discharged her in retaliation for making such complaints. Based on these allegations, Santos asserts claims for sex discrimination, sexual harassment, workers' compensation discrimination, opposition to unlawful employment practices, intentional interference with economic relations and aiding and abetting discrimination and retaliation against the Painters' Union.

For the reasons discussed above, the court finds that Santos's claims for sex discrimination, sexual harassment, and retaliation against the Painters' Union are independent, nonnegotiable state law claims that do not require interpretation of the Labor Contract for resolution and are, therefore, not preempted under § 301. As for her aiding and abetting claim, it is based on OR. REV. STAT. 659A.030(1)(g), which provides that it is an unlawful employment practice for "any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." The question of whether the Painters' Union aided and abetted in Santos's employers' discriminatory acts is purely factual. It does not require the interpretation of the Labor Contract. This claim should be treated the same as Santos's other Chapter 659 claims, which are not preempted by § 301.

The Painters' Union argues that Santos's complaints to the Painters' Union about her employers' discriminatory conduct should be viewed as an attempt to initiate a grievance under the

Labor Contract. In that case, any determination that the Painters' Union failed to properly pursue this grievance would require reference to and interpretation of the Labor Contract, which sets forth the grievance procedures. However, Santos has not stated a claim for breach of contract based on the Painters' Union's failure to pursue the grievance. Santos has clearly elected to proceed against the Painters' Union under a state statute that provides an independent nonnegotiable right to be free from discrimination and retaliation. The fact that Santos elected not to pursue the remedies offered to her under the Labor Contract does not prevent Santos from filing an action against the Painters' Union for violation of state law. "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied on is *not* a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 396 (emphasis in original).

The intentional interference claim is a state common-law claim which requires some additional consideration. In this claim, Santos asserts that the Painters' Union intentionally interfered with her employment pursuits with both past and future employers through improper means and with an improper purpose. Based on these allegations, it appears that Santos is asserting that by refusing to train her or put her back to work because she is a woman, thereby forcing her to terminate her apprenticeship and union membership, the Painters' Union intentionally and wrongfully interfered with her ability to work as an apprentice drywall finisher.

To prevail on a claim for intentional interference with economic relations, a plaintiff must establish six elements:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with the relationship, (3) by a third party, (4) accomplished through improper means or for an

> improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995). The tort "arises when a defendant induces a third party not to enter into or not to continue a business relationship with the plaintiff." *Dial Temporary Help Serv. Inc. v. Shrock*, 946 F. Supp. 847, 855 (D. Or. 1996). The interference must be wrongful "by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Top Serv. Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209 (1978).

Again, it is clear from the evidence Santos is required to offer to establish a *prima facie* claim for intentional interference claim that interpretation or construction of the Labor Contract is not required. The Painters' Union's alleged discriminatory acts forced Santos to resign from the Apprentice Program and her membership in the Painters' Union, which significantly restricted her ability to work as an apprentice drywall finisher. The only possible nexus to the Labor Contract is the requirement that contractors who have signed the Labor Contract employ only members of the Painters' Union. However, interpretation of this term of the Labor Contract is not required.

Santos's state-law claim for intentional interference with economic relations does not require interpretation of the Labor Contract. Accordingly, the answer to the first *Miller* question is "no" and the claim is not preempted by § 301 of the LMRA.

B. Federal-Law Duty of Fair Representation

Defendants also argue that this court has original jurisdiction over the complaint based on two additional grounds: 1) that Santos alleges a claim for a federal-law duty of fair representation

against the Painters' Union; and 2) that Santos alleges a violation of the Apprentice Program, which is an employee benefit plan under ERISA. Defendants' failure to assert these jurisdictional grounds in their notice of removal is not fatal. The Ninth Circuit has held that "[o]nce a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notices." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975 (9th Cir. 2006).

The federal-law duty of fair representation derives from Section 9(a) of the National Labor Relations Act (29 U.S.C. § 151 *et seq.*)("NLRA"), which authorizes a union, as the representative of a majority of the employees, to "be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. §159(a) (2007). This duty applies to representational activity, including the "negotiation, administration, and enforcement of collective bargaining agreements" and imposes on a union the duty "to represent all members . . . without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1256 (C.D. Cal. 2000)(quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979)).

Defendants acknowledge that the Ninth Circuit has not addressed the question of whether the federal-law duty of a union to fairly represent all of its members preempts a state-law claim alleging the breach of such a duty. However, Defendants encourage the court to adopt the analysis of the First Circuit set forth in *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of America*, 132 F.3d 824, 830 (1st Cir. 1997), which held that state law is completely

preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation which is grounded in federal statutes and governed by federal law.

This court does not need to determine whether the Ninth Circuit would agree that a state law claim alleging a breach of the federal-law duty of fair representations is completely preempted beacuse Santos has not alleged a claim for breach of the federal-law duty of fair representation. Santos does not allege that the Labor Contract is discriminatory or that the Painters' Union did not act with complete good faith and honesty in negotiating or enforcing the Labor Contract. Instead, Santos has alleged that the Painters' Union violated Chapter 659 of the Oregon Revised Statutes by allowing Santos's employers, all of whom were parties to the Labor Contract, to discriminate against her. In pursuing her claim, Santos is relying on a duty created by the Oregon statute applicable to all employers and employees to refrain from assisting in the discrimination of any employee based on the employee's race, religion, color, sex, national origin, marital state or age. The duty is not unique to the Painters' Union as Santos's representative under the NLRA.[8] Therefore, Santos's state-law claim for aiding and abetting under OR. REV. STAT. 659A.030(g) is not completely preempted by the federal-law duty of fair representation and does not give this court federal question jurisdiction over Santos's complaint. *See Adkins v. Mireles*, 526 F.3d 531, 539-40 (9th Cir. 2008)("To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship. Such duties must derive from sources other than the union's status as its members' exclusive collective

---

[8]The court is not convinced that the Painters' Union, to avoid potential liability under OR. REV. STAT. 659A.030(g), was obligated to respond to Santos's complaints about her employers' discrimination and retaliation. However, the fact that Santos may not have stated a valid claim under state law does not convert her allegations into a breach of the federal-law duty of fair representation.

bargaining representative. . . .")(citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990)).

C. ERISA

Like the LMRA, the Supreme Court has held that state-law claims that are sufficiently related to a qualified employee-benefit plan are completely preempted by ERISA. The test for removal is two fold – the claim must be preempted under 29 U.S.C. § 1144(a) and must fall within the scope of ERISA's enforcement provisions found at 29 U.S.C. § 1132. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-66 (1987).

ERISA specifically provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a)(2007). A state-law claim relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or relation to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The required connection exists when a state-law claim is premised on the existence of an ERISA plan and the existence of the plan is essential to the claim's survival. *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1247 (9th Cir. 2004).

Defendants argue that Santos is seeking to enforce rights allegedly due her under the Apprentice Program, which it characterizes as an ERISA plan.[9] Specifically, Defendants assert that Santos is seeking credit for previous experience. Characterized in this way, Santos's allegations appear to assert a claim for benefits under an ERISA plan. However, it is clear from the complaint and the relief requested that what Santos really wants is to force the Painters' Union to apply the

---

[9]Because the court finds that the Apprentice Program is not essential to Santos's claims, the court need not determine whether the Apprentice Program qualifies as an ERISA plan.

terms of the Apprentice Program in a nondiscriminatory way – to treat males and females the same in awarding the benefits due under the Apprentice Program. This is evidenced by the relief Santos seeks, which includes money damages, attorney fees and costs, reinstatement, and a permanent injunction barring Defendants from engaging in discriminatory or retaliatory conduct as alleged in the complaint. Nowhere in her complaint does Santos ask the court to give her credit for prior experience.

Santos's claims are not premised on the existence of the Apprentice Program. She is asking only that she be treated the same as her male counterparts in all regards. Her complaints against Defendants are based, among other things, on sexually disparaging remarks, sexually inappropriate touching, the assignment of menial tasks, and retaliation for seeking workers' compensation benefits and complaining about sexual discrimination. The Apprentice Program is not essential to any of these claims. Accordingly, Santos's claims are not preempted by ERISA. In light of this finding, the court need not address the issue of whether Santos, who is no longer a member of the Apprentice Program, has standing to assert an ERISA claim.

D. Attorney Fees

Santos asks the court to order Defendants to reimburse for reasonable attorneys incurred by her as a result of the removal. Santos argues that these fees are recoverable regardless of Defendants' state of mind or intent in removing the action in light of *Moore v. Permanente Medical Group*, 981 F.2d 443, 448 (9th Cir. 1992), in which the Ninth Circuit held that "[a]n award of attorney fees pursuant to 28 U.S.C. § 1447(c) . . . is within the discretion of the district court, and bad faith need not be demonstrated." The Supreme Court recently took on the issue of when attorney fees should be awarded under § 1447(c). In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136

(2005), the Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin* effectively overrules *Moore*.

Santos does not argue, and the court does not find, that Defendants did not have objectively reasonable grounds to remove this action to federal court or that unusual circumstances exist. The complaint specifically references the Labor Contract as well benefits available under the Apprentice Program thus facially implicating these sources of potential federal jurisdiction. These allegations serve as an "objectively reasonable basis for removal." Santos's request for attorney fees should be denied.

*Conclusion*

Santos's motion (#20) to remand should be GRANTED and this case remanded to the Circuit Court of the State of Oregon for the County of Multnomah. Santos's request for attorney fees should be DENIED.

Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than **June 15, 2009**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 29th day of May, 2009.

JOHN V. ACOSTA
United States Magistrate Judge